UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:11-cv-371–RJC–DCK

| | |
|---|---|
| US AIRWAYS, INC., | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| US AIRLINE PILOTS ASSOCIATION and MICHAEL J. CLEARY, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on the defendants' motion to dismiss the complaint filed by the plaintiff, or in the alternative to transfer this action to the Eastern District of New York, or stay this action pending resolution of the action currently pending in the Eastern District of New York (Doc. No. 37) and the parties' respective briefing on this motion. For the reasons stated below, the Court will **DENY** the defendants' motions to dismiss, stay, or transfer the above-captioned case.

I.     BACKGROUND

On July 29, 2011, Plaintiff US Airways, Inc. (US Airways) filed a Complaint and a Motion for Preliminary Injunction against Defendant US Airline Pilots Association (USAPA), and the president of USAPA, Michael Cleary. The Complaint alleges that the defendants have engaged in a campaign "to cause nationwide flight delays and cancellations in order to put pressure on US Airways in its current collective bargaining negotiations" with USAPA in violation of the "status quo" provisions of the Railway Labor Act (RLA). See (Doc. Nos. 1 at ¶1: Complaint). US Airways alleges that USAPA is directly instigating the illegal slowdown by encouraging pilots to take various measures that slow down operations of the airline and by threatening to expose and retaliate against

pilots who do not participate. On August 12, 2011, after hearing oral arguments, the Court stayed a ruling on Plaintiff's motion for a temporary restraining order (TRO) and set the matter for a preliminary injunction hearing on August 19, 2011. The defendants responded to the TRO motion by filing the instant motion to dismiss, transfer, or stay the case pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), and13. (Doc. No. 34).

Defendants contend that the complaint should be dismissed pursuant to the first-filed rule because they filed an action in the Eastern District of New York (the NY Action) against US Airways, seeking declaratory and injunctive relief, before US Airways filed the instant action against them. Defendants allege that the two actions share many common issues of fact, and that many of the allegations in US Airways's Complaint pertain to issues raised in Defendants' Amended Complaint in the NY Action. Therefore, defendants argue, the allegations in the instant action must be filed as a compulsory counterclaim in the previously filed NY Action. Moreover, defendants assert that US Airways has failed to state a claim upon which relief can be granted in the instant action because – as USAPA alleged in its Complaint in the NY Action – US Airways has itself violated the status quo provisions of the RLA and is thus barred from relief under the "unclean hands" doctrine incorporated in Section 8 of the Norris–LaGuardia Act. See (Doc. No. 37 at 23).

## II.     THE "FIRST-FILED" RULE

When a lawsuit is filed in multiple forums, the Fourth Circuit generally adheres to the "first-filed" rule, which holds that "the first suit should have priority, absent the showing of [a] balance of convenience in favor of the second action." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594-95 (4th Cir. 2004) (quoting Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974)); accord Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297, 300 (4th Cir. June 7, 2001) (unpublished). Multiple lawsuits are

subject to the first-filed rule if "the same factual issues" provide the basis for each suit. Allied-Gen. Nuclear Serv's v. Commonwealth Edison Co., 675 F.2d 610, 611 n. 1 (4th Cir.1982). Courts applying the first-filed rule will dismiss, stay, or transfer a later-filed lawsuit in deference to the earlier-filed action. See id. (citing Carbide & Carbon Chem. Corp. v. U.S. Indus. Chems., Inc., 140 F.2d 47, 49 (4th Cir. 1944)) (the earlier-filed lawsuit must proceed "to the exclusion of" subsequently-filed lawsuits); see also Quesenberry v. Volvo Group N. Am., Inc., No. 1:09cv22, 2009 WL 648658, at *2-3 (W.D. Va. March 10, 2009) ("[T]he "first-to-file" rule supports dismissing, staying or transferring [an] action . . . ."); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) ("Where the same parties have filed similar litigation in separate federal fora, . . . the later-filed action should be stayed, transferred, or enjoined."). However, application of the rule is discretionary, not mandatory. Id. at 361. As the Fourth Circuit has stated, "this Circuit has no unyielding 'first-to-file' rule." CACI Intern., Inc. v. Pentagen Technologies Int'l., 1995 WL 679952, 6 (4th Cir. 1995) (unpublished).

## III. DISCUSSION

### A. Applicability of the First-Filed Rule

In determining whether to apply the first-filed rule, courts have recognized three factors : 1) the chronology of the filings, 2) the similarity of the parties involved, and 3) the similarity of the issues at stake. E.g., Alltrade, Inc. v. Uniweld Products, Inc., 946 f.2d 622, 628 (9th Cir. 1991); Nutrition & Fitness 264 F. Supp. At 360; Plating Resources Inc. v. UTI Corp, 47 F.Supp.2d 899 at 903 (N.D.Ohio, 1999). Applying these factors here favors application of the rule.

Chronologically, the NY Action, commenced by summons and complaint on May 27, 2011, and served on US Airways on June 6, 2011, was the first-filed lawsuit. See U.S. Airline Pilots Ass'n v. US Airways, Inc., No. 1:11cv02579, 2011 WL 2138741 (E.D.N.Y. May 27,

2011).  The instant action was not filed until two months later on July 29, 2011.  Regarding the second factor, both this action and the NY Action involve almost identical parties. The only difference between the two suits is that US Airway Group, Inc., is also a defendant in the NY Action as an airline holding company of which US Airways is a wholly owned operating subsidiary, and the instant action names Cleary individually while the NY Action is brought by Cleary on behalf of the USAPA.

The third and final factor, the similarity of the issues at stake, is a close call.  In the New York action, USAPA alleges that US Airways violated the RLA's status quo and dispute resolution provisions by improperly docking pilot pay, refusing to schedule arbitrations on an accelerated basis, declining to enter global settlements of grievances and last chance agreements, refusing to resolve grievances arising under a Letter of Agreement devising a voluntary grievance mediation program, extending grievance hearings unnecessarily through the use of stall tactics, disciplining pilots (including by discharge), and restricting the type of lanyards pilots may wear to display their identification badges.  See (Doc. No. 37-1).  USAPA also claims that US Airways violated the RLA's prohibition against interfering with the right of employees to organize and is bargaining in bad faith.  See id..  USAPA points out that both actions claim violations of the RLA and discuss USAPA's Safety Committee Chairman Captain Kubik, the Safety Culture Survey, USAPA's "Safety First" lanyards, and US Airways's distance learning requirement.  US Airways emphasizes that the NY Action focuses on the conduct of US Airways during collective bargaining negotiations, and the manner in which US Airways administers the grievance and arbitration provisions contained in their CBA, while the instant action involves the conduct of USAPA and its members in implementing an illegal slowdown.

Although the two actions do involve different legal and factual issues, and are clearly not

"mirror images" of one another, this Court finds that they are substantially similar: both actions involve the same ongoing dispute between the same parties, both seek injunctive relief under the RLA,, and both will rely on some of the same evidence. This Court therefore concludes that on balance, the three factors are satisfied. However, this Court's finding of substantial similarity under the third factor of the first-filed rule does not necessarily require a finding that US Airways's claims are compulsory counterclaims in the NY Action, which is analyzed under a different standard. This Court, in fact, finds that the instant action did not arise out of "the transaction or occurrence that is the subject matter of the opposing party's claim" in the NY Action as required by Rule 13 of the Federal Rules of Civil Procedure. See Fed.R.Civ.Pro.13(a). Even if US Airways's claim in the instant case was a compulsory counterclaim in the NY Action, the Eastern District of New York has just granted Plaintiff's request to file a motion to dismiss the Amended Complaint in the NY Action, and it therefore appears improper (though not impermissible) to allege any counterclaims in the NY Action at this time. See (Doc. No. 43 at 24). US Airways's letter requesting dismissal of the NY Action is part of the record before this Court, and the undersigned has reviewed the arguments for dismissal contained therein. Without speaking to the merits of those arguments, this Court finds that the Eastern District of New York could rule in favor of US Airways. For all of these reasons, the instant action will not be considered a compulsory counterclaim in the NY Action.

B.     **Exceptions to the First-Filed Rule**

Having decided that the three factors of the first-filed rule are satisfied, this Court next considers whether the "balance of convenience" nevertheless warrants dispensing with the rule and litigating the Plaintiff's claims in this forum. See Volvo Contr. Equip. N. Am., Inc., 386 F.3d at 584-95. The factors the Court is to consider under this inquiry are "essentially the same

as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." Employers Ins. of Wasau v. Fox Entm't Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008) (quoting Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 178 F. Supp. 2d 459, 465 (S.D.N.Y.2002)). See also Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 901 (D. Md. 2008); Christian Broadcasting Network, Inc. v. Busch, No. Civ. A. 2:05cv558, 2006 WL 51190, at *5 (E.D. Va. Jan. 9, 2006). Eleven general factors guide the Court's analysis of a motion to transfer venue: (1) the plaintiff's choice of forum; (2) the residence of the parties; (3) access to evidence; (4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses; (5) the possibility of a view by the jury; (6) the enforceability of a judgment; (7) the relative advantages and obstacles to a fair trial; (8) practical issues affecting trial expediency and efficiency; (9) the relative court congestion between the districts; (10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of conflict of laws. Nutrition & Fitness, Inc., 264 F. Supp. 2d at 362 (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93, 96 (W.D.N.C. 1990)).

Applying these factors, this Court finds that the balance of convenience weighs heavily in favor of this forum. The Plaintiff's choice of forum (factor one) refers to US Airways's decision to file its lawsuit in North Carolina, and not to USAPA's decision as the plaintiff in the first-filed action to file in New York.[1] See Quesenberry, 2009 WL 648658 at *6 (finding that the second-

---

[1] In St. Paul Fire & Marine Ins. Co. v, Renne Acquisitions Corp, 2010 WL 2465543 (W.D.N.C. June 14, 2010), this Court noted the defendant's choice of forum as being entitled to deference where the defendant had been the first-to-file a mirror image lawsuit in another forum and was entitled to a transfer under the first-filed rule. Where, as here, the second-to-file

6

to-file Plaintiff's choice of forum is "ordinarily to be given great weight"); United Energy Distributors, Inc. v. Rankin-Patterson Oil Co., Inc., No. 7:07-3234-HMH, 2007 WL 4568997 at *2 (D.S.C. Dec 20, 2007) (evaluating the second-to-file Plaintiff's choice of forum in denying Defendant's motion to transfer venue). Accordingly, this factor favors venue in Charlotte. See Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947) 508) ("[T]he plaintiff's choice of forum should rarely be disturbed.").

The residence of the parties (factor two), access to evidence (factor three), and availability of Compulsory Witnesses and Associated Costs (factor four) all cut in favor of keeping this action in this forum. Charlotte is home to USAPA's headquarters, US Airways's largest hub and the largest East pilot domicile. Consequently it is a convenient forum for potential witnesses and pilots. Moreover, Defendants do not identify any witness subject to process in New York who would be unavailable for a trial in Charlotte, but US Airways does assert that there are witnesses who reside in the Charlotte area who would not be subject to compulsory process in New York. See (Doc. No. 43 at 12).

Neither party has argued that a view by the jury (factor five) is necessary, so the Court gives this factor no weight. Concerns with enforceability of the judgment (factor six) and the relative advantages and obstacles to a fair trial (factor seven) are also uncontested by the parties and raise no issue for this Court.

Practical issues affecting trial expediency and efficiency (factor eight) favor venue in Charlotte. In the instant action, the parties have filed lengthy briefs, testimony, and documentary

---

Plaintiff's choice of forum has a substantial connection to the controversy at issue in the second-filed case, it is the plaintiff's choice of forum that will be given deference. See United Energy Distributors, 2007 WL 4568997 at *2.

evidence addressing the merits of US Airways's claims and have already had a TRO hearing before this Court and are rapidly proceeding toward a preliminary injunction hearing. In the NY Action, however, the parties have not even had an initial status conference, and that court has not made any substantive rulings. Practically speaking, trial in this venue appears likely to be more expedient and efficient than in New York. In the same vein, the relative court congestion between the districts (factor nine) supports venue in Charlotte. Contrary to Defendants' contention that "both districts are busy and neither forum has an advantage[,]" (Doc. No. 37 at 25), US Airways submits credible, statistical evidence from the Administrative Office of U.S. Courts that this Court is less congested than the Eastern District of New York based on 2010 statistics comparing the number of civil filings, pending cases, completed trials, and the median time from civil filings to disposition . See (Doc. No. 43 at 13).

The interest of resolving localized controversies at home (factor ten) is not significant in this case as US Airways services people from all over the world, so this controversy necessarily has wide-reaching implications. Notwithstanding, this factor tips the balance slightly more in favor of Charlotte considering that US Airways alleges that the primary impact of the slowdown has been suffered in Charlotte, and the publications allegedly encouraging the slowdown originated in Charlotte. See (Doc. No. 43 at 15). Finally, avoidance of conflict of laws (factor eleven) is not at issue in this case. In sum, the balance of convenience clearly favors this forum.

**C.      Whether the Norris--LaGuardia Act Bars this Action**

Section 8[2] of the Norris–LaGuardia Act (NGLA), 29 U.S.C. §§ 101 *et seq*, prevents

---

[2] Section 8 of the NLGA provides that: No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or

injunctive relief from being granted to any party in a labor dispute who has failed to comply with all obligations imposed by law, or who has failed to make every reasonable effort to settle the labor dispute in question. Defendants argue that US Airways has violated Section 8's "clean hands" requirement by committing its own status quo violations and by failing to make every reasonable effort to resolve this dispute. As a result, Defendant asserts, this Court lacks subject matter jurisdiction over US Airways's claims.

Assuming *arguendo* that US Airways did violate Section 8 of the NLGA, that still does not form "an absolute bar to injunctive relief against status quo violations." United Air Line, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, 243 F.3d 349, 365 n.11 (7th Cir. 2001) (citation omitted). Rather, this Court must weigh "the competing equities to determine whether applying section 8's bar to injunction relief would serve to further underlying purposes of both the RLA and the NGLA." Id. Here, the balancing of hardships and the public interest weigh in favor of at least considering an injunction in this case, despite the possibility that US Airways may have unclean hands. This conclusion is especially true in light of the fact that there is no evidence before this Court that US Airways has violated the status quo or failed to make every effort to resolve this dispute. Moreover, if USAPA does submit such evidence, this Court would be evaluating it only to determine the limited issue of whether the unclean hands provision of the NLGA precludes an RLA injunction. This Court's assessment is thus for a different purpose than in the NY Action, where (if the case is not dismissed), the Eastern District of New York will be determining whether US Airways has violated Section 2 of the RLA. Accordingly, the danger of inconsistent results or a waste or judicial resources is minimal.

---

voluntary arbitration. 29 U.S.C. § 108.

9

The Court thus finds that a balance of convenience favors this forum such that an exception to the first-filed rule is justified, and that the Court is not positively barred from considering a preliminary injunction. This conclusion is consistent with the policy underlying the first-filed rule, which seeks to avoid duplicative litigation and conserve judicial resources, and also it upholds the RLA's goal of protecting the public from interruptions to transportation caused by labor disputes.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the defendant's motion to dismiss the complaint filed by the plaintiff, or in the alternative to transfer this action to the Eastern District of New York, or stay this action pending resolution of the action currently pending in the Eastern District of New York (Doc. No. 37) is **DENIED**.

Signed: August 17, 2011

Robert J. Conrad, Jr.
Chief United States District Judge