UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-371-RJC-DCK

| US AIRWAYS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| | ) |
| US AIRLINE PILOTS ASSOCITATION, | ) |
| and MICHAEL J., CLEARY | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendant's Motion to Vacate the Permanent Injunction, (Doc. 93), and the memoranda supporting the respective positions of the parties, (Docs. 94–96). It is ripe for review.

## I. BACKGROUND

The question in this case is whether to vacate a permanent injunction issued by this Court two years ago to enjoin violations of the Railway Labor Act (RLA). The injunction was issued in response to a pattern of unlawful work stoppages perpetrated by Defendants in order to gain leverage in a collective bargaining dispute with the Plaintiff, US Airways, Inc. Defendants, a pilots' union (USAPA) and its officer, were specifically enjoined from coordinating and conducting slowdown tactics such as delaying flight times by issuing superfluous maintenance write-ups and prolonging taxi times. (Doc. 72). After the parties agreed to convert the preliminary injunction into a permanent injunction on January 11, 2012, (Doc. 91), US Airways merged with American Airlines, (collectively: American). Defendants contend that changed factual circumstances stemming from the merger justify dissolving the injunction. (Id.).

US Airways and American Airlines memorialized their merger with a Memorandum of Understanding, (MOU), which implemented industry standard pay and job protections for US Airways pilots. (Doc. 94). It is the Defendants' position that the MOU renders the injunction unnecessary. (Doc. 94). Furthermore, Defendants contend that good faith compliance for two years weighs heavily in favor of dissolution. (Doc. 94).

Plaintiff disagrees and contends that circumstances have not changed to the extent necessary to justify dissolving the injunction. Significantly, Plaintiff argues that it is precisely because the parties are about to enter into collective bargaining negotiations that Defendants seek to dissolve the injunction. Notwithstanding Defendants' full compliance, it is the Plaintiff's position that the injunction is still needed to prevent unlawful work stoppages that could ensue as the parties enter into collective bargaining negotiations. (Doc. 95).

## II. STANDARD OF REVIEW

As the party seeking relief from the injunction, Defendants bear the burden of establishing that changed circumstances warrant relief. FED. R. CIV. P. 60(b)(6); In re Brunley, 938 F.2d 1, 3 (4th Cir. 1992) (internal citations omitted). Courts consider several factors in determining whether to vacate a permanent injunction, including: (1) the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented; (2) the length of time since entry of the injunction; (3) whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; (4) the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction; and, (5) whether the objective of the decree has been achieved and whether continued enforcement would be detrimental to the

public interest. North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dep't of Transp., 713 F. Supp. 2d 491, 512 (M.D.N.C. 2010).

## III. DISCUSSION

Defendants offer several reasons why this Court should vacate the permanent injunction, including: that the injunction is moot because the union is no longer engaged in collective bargaining with US Airways; that the MOU implemented favorable industry standard terms and thereby removed any incentive to engage in slowdown tactics; that the injunction is burdensome because it is not narrowly tailored; and, that it adds an element of confusion as to whether the new American Airlines is protected by the injunction and whether post-merger pilots are bound by it. Finally, USAPA contends that its good faith compliance for two years weighs heavily in favor of dissolution.

By contrast, US Airways contends that this motion, filed on the eve of negotiations for a joint collective bargaining agreement (JCBA), suggests an intent to resume a campaign of slowdown tactics; that compliance with the injunction is not burdensome as it merely mandates that Defendants refrain from behavior which they have no legal right to engage in; and that the injunction is necessary to the public interest to protect the flying public from delays and cancellations.

A permanent injunction may be dissolved when it is no longer equitable due to changed or unforeseen circumstances. FED. R. CIV. PRO. 60(b)(6); Crutchfield v. U.S. Army Corps of Engineers, 175 F. Supp. 2d 835, 843 (E.D.Va. 2001). However, the Defendants have not carried the initial burden of showing that circumstances stemming from the unforeseen merger warrant the extraordinary relief of dissolving a permanent injunction. See id.

3

Principally, it cannot be said that the concerns that brought about the injunction have been put to rest due to the merger. Under the terms of the merger, the parties are scheduled to engage in a new set of collective bargaining negotiations to establish contractual terms applicable to all pilots employed by (post-merger) American Airlines. (Doc. 95). Therefore, it does not follow that there is "nothing left to address" as Defendants claim. (Doc. 94).

Moreover, notwithstanding the upcoming JCBA negotiations, Defendants have failed to offer any substantive reason why the injunction is unduly burdensome and detrimental to the public interest. Even if all contentious issues had been resolved by the merger, complying with duties already existing (under the RLA) is not substantially more onerous now than at the time the injunction was issued. Additionally, the extent to which the merger renders the injunction unworkable appears to be overstated. Defendants' arguments would have more traction if the effect of the injunction was to prohibit a class of pilots from performing activities that another class was allowed to perform freely. Here, the injunction does nothing more than formally prohibit activities to a certain class of pilots that are already prohibited to all pilots. This is another way of saying that the injunction merely requires Defendants to obey the existing laws; it does not, by its own terms, create any differences in the types of activities allowed by certain classes of pilots. On balance, Defendants' good faith compliance, while relevant, is nonetheless outweighed by the natural possibility that slowdown tactics might resume during any negotiations.

Finally, Defendant contends the injunction must be vacated because it is inconsistent with the Norris-LaGuardia Act (NLGA). This argument is unavailing. While the NLGA prevents courts from issuing injunctions that unfairly curb a union's collective bargaining power, it does

4

not displace the Railway Labor Act, which governs collective bargaining disputes and takes precedence over the NLGA. Brotherhood of R.R. Trainmen v. Chicago R.R. & Ind. R.R. Co., 353 U.S. 30, 40 (1957). The Supreme Court has repeatedly found that district courts have the authority to enjoin RLA violations even if they have an adverse effect on the collective bargaining posture of a party. Id. at 42. The district court has the "jurisdiction and power to issue necessary injunctive orders (to enforce compliance with the requirements of the Railway Labor Act) notwithstanding the provisions of the Norris-LaGuardia Act." Id. (quoting Brotherhood of R.R. Trainmen v. Howard, 343 U.S. 768, 774 (1952)) (parentheses in original).

This Court conducted an NLGA analysis when it granted the preliminary injunction and found no conflict between the terms of the injunction and the NLGA as the former merely enforced compliance with the RLA. (Doc. 72). Additionally, the NLGA establishes standards for injunctive relief and does not speak to the dissolution of injunctions. 29 U.S.C. § 101. Accordingly, this injunction remains relevant to prevent RLA violations, and the NLGA does not set forth any criteria that would require this Court to vacate a valid permanent injunction. For these reasons, the Court **denies** Defendants' motion to vacate the permanent injunction.

IV. **CONCLUSION**

    **IT IS, THEREFORE, ORDERED** that:

    1.    Plaintiff's Motion to Vacate the Permanent Injunction (Doc. No. 93), is **DENIED**;

    2.    The Clerk of Court is directed to close this case.

Signed: June 13, 2014

Robert J. Conrad, Jr.
United States District Judge